## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NAKAMURA TRADING COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 CV 7205 |
| | ) Judge Blanche M. Manning |
| SANKYO CORPORATION, | ) |
| and SANKYO NORTH AMERICA, | ) |
| CORPORATION, | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Plaintiff Nakamura Trading Company ("NTC") has brought suit alleging various claims such as breach of contract, unjust enrichment, and breach of fiduciary duty, against defendants Sankyo Corporation ("Sankyo") and Sankyo North America ("SNA"). These claims, among others, arise out of a joint venture agreement among the parties. The defendants have brought the current motion to compel arbitration and stay pending arbitration. For the reasons set forth below, the motion is granted in part and denied in part.

**Facts**

NTC is an Illinois corporation whose shareholders are Masahiro Nakamura and Sankyo, a closely-held Japanese corporation. SNA is the American subsidiary of Sankyo. In 1997, NTC was created as a joint venture between Sankyo and Nakamura to market and sell Sankyo products, including press dies and jigs, automobile parts, agricultural machinery parts, and electronic appliance parts, in the United States. According to the defendants, Sankyo invested $40,000 in NTC and became a 40% shareholder, while Nakamura invested $60,000 and became a 60% shareholder in NTC. The parties confirmed their relationship in a written contract (the

"Agreement") in April 2002 after operating several years without one.

By letter dated February 18, 2003, Sankyo terminated the Agreement effective May 18, 2003. Sankyo asserts that the termination occurred, in part, because it had loaned a net amount of approximately $850,000 to NTC in the five years of NTC's existence but NTC had yet to turn a profit. The instant lawsuit by NTC alleges that Sankyo wrongfully terminated the contract and seeks payment of several million dollars in commissions.

The Agreement, originally drafted in Japanese, is quite brief and includes an arbitration clause. Sankyo and SNA contend that the proper translation of the arbitration clause is:

> When international disputes arise, arbitration proceedings shall take place in the State of Illinois if party A [Sankyo] sues party B [NTC], and arbitration proceedings shall take place in Hyogo Prefecture if [NTC] sues [Sankyo].

Alternatively, NTC asserts that the clause should be translated as follows:

> In case there is an international dispute, the arbitration proceeding initiated by Party A [Sankyo] shall be in the State of Illinois, and the arbitration proceeding initiated by Party B [NTC] shall be in Hyogo Prefecture.

**Analysis**

In addressing the merits of the motion, the court notes as an initial matter that NTC has failed to cite to any authorities whatsoever in support of its opposition to the motion. Nevertheless, the court proceeds with its analysis.

*Claims against Sankyo*

"The Federal Arbitration Act governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere* 51 F.3d 686, 688 (7th Cir. 1995) (citations omitted). "Chapter 2 of the Act, 9 U.S.C. §§ 201-208, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral

Awards, controls arbitration disputes in the international context." *Id.* In general, the Act creates a strong presumption in favor of arbitration, especially in international commercial agreements. *Id*. (citations omitted). Moreover, "[b]y acceding to the Convention, the United States joined other signatory nations in proclaiming a willingness to enforce arbitration clauses in international commercial agreements." *Marchetto v. DeKalb Genetics Corp.*, 711 F. Supp. 936, 938 (N.D. Ill. 1989) (citations omitted). Japan is also a signatory to the Convention. *See* 9 U.S.C. § 201, as note subsequent to the Convention text.

> Article II(3) of the Convention states that:
>
> > The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Based on the above authorities, courts ask four questions when attempting to ascertain whether arbitration is required pursuant to the Convention: whether (1) there is a written arbitration agreement; (2) the agreement provides for arbitration in a signatory country; (3) the agreement arises out of a commercial legal relationship; and (4) the commercial transaction has a reasonable relationship to a foreign state. *Marchetto*, 711 F. Supp. at 939 (citations omitted). "If these factors are met, arbitration is mandatory." *Id*.

Starting with question (2), Japan and the United States are signatories to the Convention, and the arbitration provision, assuming it is determined to be a binding agreement to arbitrate, contemplates arbitration in either one or the other locations, depending on which party initiates the arbitration. *See* 9 U.S.C. § 201, as note subsequent to the Convention text. As to question (3), the relationship between the parties arises out of a commercial legal relationship (i.e, the

joint venture). And as for question (4), the joint venture has a reasonable relationship to Japan in that one of the joint venturers is a Japanese corporation (i.e., Sankyo) and the products being sold by the venture are manufactured in Japan.

Thus, the first question, whether there is a written arbitration agreement, is the only one at issue. The court looks to state law to ascertain the proper interpretation of the agreement. *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003) (rejecting argument that federal law applies to interpretation of arbitration clause and stating that "[m]ost interpretive disputes [of arbitration agreements] must be resolved under state law. Federal law does affect, however, the extent to which state law may specify special rules for arbitration: any rule of state law disfavoring or prohibiting arbitration for a class of transactions is preempted.") (citations omitted). Neither party discusses the choice of law issue. The court assumes that two possibilities exist as to which law applies: Illinois (location of NTC) or Japan (location of Sankyo and according to NTC, where the contract was drafted). Given that neither party has addressed the issue and has not educated the court on Japanese law regarding the interpretation of arbitration clauses, the court will assume that Illinois contract interpretation principles apply.

As noted above, the parties dispute the proper translation of the arbitration clause. NTC sets forth its translation and refers to the arbitration provision as "optional." NTC argues that the clause means that *if* NTC initiates an arbitration proceeding, it shall do so in the Hyogo Prefecture, and *if* Sankyo initiates such a proceeding, it will do so in Illinois. According to NTC, the contract does not require the parties to arbitrate; rather, it only defines the arbitration venue in case either party wants to use arbitration to resolve the dispute. On the other hand, Sankyo contends that the provision is mandatory, even under the translation proffered by NTC.

The Agreement itself is quite short and contains little superfluous language. According to the translation provided by Sankyo (NTC does not provide a translation of the whole Agreement), the entire Agreement is only two pages long and sets forth a scant outline of the contractual rights and obligations of the parties. The entirety of the discussion as to any disputes between the parties is laid out in the arbitration clause as set forth earlier. (Article 17 of the Agreement does state that if any "other issues" arise other than as already provided in the Agreement, the parties should have "cooperative discussions" and come to a decision. However, the court does not construe that provision as one regulating dispute resolution but merely dictating how the parties should address any issues – not necessarily disputes – that are not expressly set forth in the Agreement.).

All this to say that the arbitration clause essentially exists on its own in the Agreement. There are no other paragraphs which provide context or which in any way inform a proper reading of the arbitration clause.

Ultimately, however, the court reads the two different translations in the same way – as mandating arbitration. Given that NTC asserts that its translation is correct, the court will address its analysis to NTC's translation. To repeat, the provision reads, according to NTC: "In case there is an international dispute, the arbitration initiated by Party A shall be in the State of Illinois, the arbitration proceeding initiated by Party B shall be in Hyogo Prefecture." Far from providing that arbitration is optional, the plain meaning of the NTC translation requires arbitration by setting forth the location for "*the*" arbitration proceeding "*in case there is an international dispute.*"

The use of the word "the" before arbitration indicates that the parties contemplated *only*

arbitration in the event of an international dispute. The lack of any forum selection clause (or any provision for that matter) regarding litigation also supports the court's decision that the arbitration provision is mandatory. If litigation were an option, why would the parties feel compelled to expressly provide for the location of arbitration yet not litigation? Thus, given the plain meaning of the translation offered by NTC, *Downs v. Steel and Craft Builders, Inc*. 831 N.E.2d 92, 98 (Ill. App. Ct. 2005) ("When interpreting a contract, we must consider the entire document to give effect to the parties' intent, as determined by the plain and ordinary meaning of the language of the contract.") (internal citations omitted), the court finds that Sankyo may compel arbitration of any claims that NTC seeks to bring against it.

*Claims against SNA*

In addition to the claims against Sankyo, NTC has also alleged several claims against SNA, Sankyo's American subsidiary. SNA argues that the court should compel arbitration as to any claims that NTC seeks to make against SNA even though SNA is not a signatory to the Agreement.

The court notes that NTC has wholly failed to address this issue in its response brief. Given NTC's total failure to cite any authority for its position, the court deems any position in opposition forfeited. *Cotter v. Village of Maple Park*, 04 C 1794, 2006 WL 218161, at *17 n.11 (N.D. Ill. Jan. 25, 2006) ("By failing to respond to defendants' argument that Cotter was not entitled to a hearing before being placed on administrative leave, Cotter has waived his opposition.") (citation omitted).

Despite the fact that the plaintiff has forfeited its opposition, the court cannot resolve the issue of SNA's ability to compel arbitration given the parties failure to address the choice of law

issue. While, as noted above, the Seventh Circuit has concluded that state law governs the interpretation of arbitration clauses, the defendants rely on federal law under the FAA.[1] Here, SNA, the party seeking to compel arbitration, is located in Livonia, Michigan, and NTC, the party it seeks to compel is based in Illinois. It is not clear what other states might be considered relevant in a choice of law analysis as to the claims NTC has brought against SNA.

Accordingly, the court declines to undertake this possibly time-consuming and involved choice of law analysis on behalf of SNA, particularly given that the parties have not addressed the issue in any way. The court sees the choice of law issue to be that much more important given that it appears that Illinois law, at least, is not necessarily in agreement with the federal authorities relied upon by SNA with respect to this issue. *Holden*, 390 F. Supp. 2d at 769 (noting that "those [Illinois] decisions [cited by the plaintiffs] reject application of the entire line of federal precedent embodied in cases like *MS Dealer* and *Grigson* [discussing legal theories under which a nonsignatory may compel a signatory to arbitrate which were relied upon by the district court ] . . . .").

Because the parties have not addressed the issue of which law applies, and, in turn, what the substance of that law is, both of which are necessary to resolve whether SNA can compel arbitration of the claims against it, the court denies SNA's motion to compel arbitration.

SNA seeks a stay of the litigation in the event that the court finds that it cannot compel

---

[1] The case relied upon by the defendants is *Holden v. Deloitte & Touche LLP,* 390 F. Supp. 2d 752 (N.D. Ill. 2005). In that case, the plaintiffs argued in a motion for reconsideration that the previous district court (the case had been transferred from a different district court judge) erred in its determination that a nonsignatory could compel arbitration because the previous court had applied federal law instead of California law. The transferee district court concluded no error had occurred because a California appellate case expressly stated that federal law applies when ascertaining whether a nonsignatory can compel a signatory to arbitrate. *Id*. at 762.

NTC to arbitrate any claims it may have against it, citing *Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 116-17 (7th Cir. 1993) (relying upon §3 of the FAA and *Morrie & Shirley Mages Foundation v. Thrifty Corp.*, 916 F.2d 402 (7th Cir. 1993)), for the proposition that a nonparty to an arbitration agreement can obtain a stay of litigation.[2] However, in a subsequent case, *IDS Life Ins. Co. v. Sunamerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996), the Seventh Circuit referred to the *Morrie & Shirley Mages* case in addressing a similar situation. The *IDS Life* court stated that "[a]lthough not expressly so limited, section 3 [of the FAA] assumes and the case law holds that the movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, as must be the person sought to be stayed." The *IDS Life* court noted, however, that "[p]arallel proceedings, one judicial, one arbitral, are governed instead, . . . , by the normal rules for parallel-proceeding abstention." *Id.*

SNA is not a signatory to the Agreement and thus, may not seek a stay under §3 of the FAA. However, SNA argues generally that resolution of any claim against SNA could have preclusive effect in an arbitration proceeding against Sankyo because Sankyo, as a shareholder of SNA, could be deemed to be in privity with SNA for purposes of collateral estoppel. As such, allowing the claims against SNA to be litigated in court would, according to SNA, undermine the parties' agreement to arbitrate their disputes.[3] *Allied Van Lines, Inc. v. Orth Van and Storage, Inc.*, 04 C 6004, 2005 WL 1563111, at *3 (N.D. Ill. June 3, 2005) (noting the court's inherent

---

[2] NTC again fails to address the issue of the stay as to SNA, and thus has forfeited any opposition to it. *See Cotter,* 04 C 1794, 2006 WL 218161, at *17 n.11.

[3] SNA also argues that its conduct will likely be at issue in the arbitration proceedings because NTC has alleged that SNA was formed in the United States to divert business from NTC to Sankyo. Even if this is true, it is not clear why the litigation should be subject to a stay simply because SNA's conduct may be addressed at the arbitration.

power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants'" and concluding that "[a] stay may be warranted 'where the pending proceeding is an arbitration in which issues involved may be determined.'") (citations omitted).

The court finds that the possibility of subverting the arbitration agreement between the parties is a real possibility if the court were to allow the case against SNA to move forward given the likely preclusive effect of any judgment in the SNA litigation on the issues raised in the arbitration. As such, the court, in its discretion, stays the litigation against SNA. *See id.* (granting a stay of litigation pending arbitration against a nonsignatory to an arbitration agreement in the interests of judicial economy given the similarity of the issues, the hardship of the nonsignatory in having to defend both the litigation and the arbitration, and the lack of harm to the plaintiff.).

**Conclusion**

Accordingly, Sankyo and SNA's motion to compel arbitration [9-1] against NTC is granted in part and denied in part. Sankyo's motion to compel is granted. NTC should proceed to arbitration as provided in the Agreement if it wishes to pursue the claims set forth in the First Amended Complaint against Sankyo. SNA's motion to compel is denied but the motion to stay the litigation pending arbitration is granted. The clerk shall place this case on the court's suspense docket.

**ENTER:**

**DATE:** April 19, 2006

_____
**Blanche M. Manning**
**United States District Judge**